# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00801

APEG Energy II, GP and APEG Energy II, LP,

          Plaintiffs,

    v.

David Veltri,

          Defendant.

    v.

U.S. Energy Corporation,

          Nominal Defendant

---

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

---

## INTRODUCTION

This is a derivative action brought by a shareholder of U.S. Energy Corporation (U.S. Energy), a Wyoming Corporation, on behalf of U.S. Energy to declare the voting rights of the board of directors and enjoin further action by U.S. Energy's former Chief Executive Officer, David Veltri. A majority of U.S. Energy's board of directors voted to terminate Veltri's employment for cause. After the meeting when the vote was conducted, Veltri attempted to unlawfully cast his director vote against the motion to terminate his employment and refused to acknowledge his termination by the board. Under Wyoming law, Veltri had a conflict of interest in voting on his termination, which precluded him from voting. The first vote that terminated his

employment as CEO is valid and controlling, and all acts taken by Veltri are *ultra vires* and harmful to the Company.

Veltri has refused calls by the board to abide by the first vote and has taken materially adverse actions on behalf of the Company without disclosing such acts to the board or obtaining board approval, including filing a lawsuit against the Plaintiffs in Texas on behalf of US Energy. The Plaintiffs have no choice but to ask this Court to intervene and declare the board's voting rights, decide whether Veltri lawfully participated in that vote, and determine whether Veltri should remain U.S. Energy's CEO by applying Wyoming law. Likewise, Plaintiffs ask this Court for an injunction to preclude Veltri from acting as CEO of U.S. Energy and declare all acts taken by Veltri after his terminate as *ultra vires*.

## PARTIES

1.      Plaintiff APEG Energy II, GP, LLC (APEG GP), is a Texas limited liability company with its principal place of business in Austin, Texas. APEG GP has two members, both of whom reside in Texas. APEG GP is the general partner of APEG Energy II, LP. (APEG LP) which is a Texas limited partnership with its principal place of business in Austin, Texas. APEG LP has forty limited partners, none of which reside in Colorado. APEG LP is the largest shareholder of U.S. Energy Corporation and owns approximately 43% of the outstanding common stock of U.S. Energy.

2.      Defendant David Veltri is a resident of Colorado. He was the Chief Executive Officer of U.S. Energy Corporation and is a member of its board of directors.

3.      U.S. Energy Corporation is a Wyoming corporation, with its principal place of business in Denver, Colorado. The stock of U.S. Energy is publicly traded on the Nasdaq CM

exchange under the symbol of USEG. U.S. Energy is a nominal Defendant in this derivative action because it is a necessary party to resolve this case. Although the Plaintiffs have brought this as a derivative action on U.S. Energy's behalf, the ultimate rulings by this Court must be enforceable by and against U.S. Energy. It is therefore necessary for U.S. Energy to be a nominal party. But it has no need to participate because the Plaintiffs will fairly represent its interests.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this case under 28 U.S.C. § 1332(a). Complete diversity exists between Plaintiffs and the Defendant. Also, the amount in controversy, considering the impacts of the claim for injunctive relief, exceeds $75,000.00. Veltri's salary is approximately $350,000.00 per year. A declaration by this Court that he is no longer CEO would terminate that salary.

5.      Venue is proper in this Court because the cause of action arose from actions taken in Colorado by a citizen of Colorado. U.S. Energy also has its corporate headquarters in Denver, CO.

## AVAILABILITY OF SHAREHOLDER'S DERIVATIVE ACTION

6.      A shareholder can bring a suit on behalf of a Wyoming corporation to challenge corporate action and to enjoin an act of the corporation. Wyo. Stat. Ann. § 17-16-304(b)(i).

7.      This Court has the authority to enjoin or set an aside the challenged corporate acts. Wyo. Stat. Ann. § 17-16-304(c).

8.      At the time of the challenged corporate action involved in this case, Plaintiff APEG LP was a shareholder of U.S. Energy. As of filing this Complaint, Plaintiff APEG LP remains a shareholder of U.S. Energy, holding 43% of the shares outstanding.

9.      In bringing this action, Plaintiffs will fairly represent U.S. Energy's interests in enforcing the right of the corporation to have the voting rights of its board of directors declared and enforced.

10.      Plaintiffs wrote a letter to the Company board of directors in February raising concerns regarding the financial reporting of the company, unaccounted cash payments, lack of performance by management and risk of being delisted and calling for a change in management. This letter triggered an aggressive set of tactics by Veltri to preserve his deadlock control over the company and continue operating without any board oversight. Veltri codified his control by changing the bylaws to empower him (only) as the CEO to call board meetings or special board meetings. Conversely, all other directors had to build a consensus of a minimum of 3 directors to call any meetings themselves. After receiving Plaintiffs' letter to the board, Veltri began taking punitive actions against Plaintiffs without disclosing those actions and having them approved by the board.

11.      In December 31, 2018, the Company had received enforcement notice form the SEC that they would be delisted if the Company did not take corporate action to strength the Company's business outlook and increase its stock price. This notice was sent to Veltri, and he failed to disclose the threat of delisting to the board of directors. The board of directors learned of the delisting threat from Plaintiffs' letter to the board dated February 14, 2019. The threat of delisting has increased because of the public disclosure of the Company's dysfunction of the board of directors and the rogue behavior of Veltri, which has cost the Company over 20% of its available cash. If the dysfunction of the board and the *ultra vires* actions of Veltri can continue

the company may be delisted and become defunct. Immediate action is necessary to prevent the irreparable harm of Veltri's actions and the possibility of delisting of the stock.

## GENERAL ALLEGATIONS

12.     U.S. Energy is an independent exploration and production company focused on exploring, developing and producing oil and natural gas in the United States. U.S. Energy is a corporation organized under the laws of Wyoming. It is a publicly traded company on the NASDAQ.

13.     U.S. Energy's corporate headquarters is located at 950 S. Cherry St, Suite 1515, Denver, Colorado.

**A.     U.S. Energy's Corporate Structure**

14.     U.S. Energy's most recent version of its Articles of Incorporation state that the company "shall be governed" by a Board of Directors in accordance with the "By-Laws of the Corporation and the statutes of the State of Wyoming now or hereafter in effect." (See Article VI of Articles of Incorporation attached as Exhibit 1.)

15.     U.S. Energy's By-Laws establish a five-member board of directors and a four-person team of officers. The CEO of the Company also serves as President of the Board but acts "subject to the control of the Board" in operation of the general affairs of U.S. Energy. (See Article III of By-Laws attached as Exhibit 2.)

16.     Currently, U.S. Energy has four members on its board of directors: Veltri, J. Weldon Chitwood, John G. Hoffman, and Javier F. Pico.

17.     The board should have five directors, but Veltri as Chairman has delayed adding any additional directors for 18 months and proceeded to amend the bylaws to allow only him in

his power as chairman and CEO to call a special board meeting of the directors. This has resulted in a deadlocked board.

18.     U.S. Energy has an Audit Committee that oversees the management of U.S. Energy. The Committee's purpose is to ensure compliance with internal controls, applicable laws and regulations, and U.S. Energy policy. (See Audit Committee Charter attached as Exhibit 3.)

19.     U.S. Energy and Plaintiffs are also tied together through credit agreements. In 2010, U.S. Energy received a $10,000,000.00 line of credit from BNP Paribas. In August 2015, Wells Fargo Bank bought the loan from Paribas and, after purchasing the loan, the parties have amended it four (4) times reducing the size of the credit facility. On the third amendment, Wells Fargo required a Deposit Account Control Agreement (DACA) and a Credit Agreement (the Credit Agreement) whereby U.S. Energy agreed, among other things, to pledge funds in specific bank accounts as collateral for the Wells Fargo loan. Section 3 of the DACA provides U.S. Energy's lender with U.S. Energy's irrevocable consent to Plaintiffs terminating access to certain accounts and transferring funds to Plaintiffs' possession.

**B.     The Vote to Terminate Veltri as CEO.**

20.     On or about February 15, 2019, Plaintiffs informed the board of Plaintiffs' concerns regarding the threat of delisting, lack of performance of management, un- accounted expenditures by Management, and that Plaintiffs would not support Veltri's reelection as a director.

21.     Without board knowledge or approval, Veltri solely responded to Plaintiff's letter to the board with a litany of excuses, and contemporaneously therewith attempted to draw down $5 million dollars on the Credit Agreement even though the Company was in default, had no

schedule of how it would use the funds, nor the ability to repay the funds within the six-month maturity date. On February 21, Plaintiffs sensed the dysfunction and the risk to its unpaid principal owed by the Company and exercised its rights under the Deposit Account Control Agreement by terminating Veltri's access rights to the Company's operating accounts to restore order to the Company and negotiate a peaceful transition for Veltri. Those negotiations failed as Veltri, again without any board approval, directed Kutak Rock to retain local counsel to sue Plaintiffs in Texas for exercising its rights.

22.     On information and belief, on February 25, 2019, two members of the board of directors moved to terminate Veltri's employment as CEO for cause at a board of directors meeting. The board had learned that Veltri had taken certain material actions and had directed U.S. Energy's corporate counsel to take certain legal actions on behalf of U.S. Energy without properly disclosing those actions to the board for approval. After a discussion of these acts, Director Chitwood motioned that the board consider the termination of Veltri for cause.

23.     On information and belief, an argument arose as to whether Veltri as a director could vote on his personal employment with the company. Directors Chitwood and Pico believed that Veltri must recuse himself from the vote consistent with U.S. Energy's related-party transaction policy and proper corporate governance. In past meetings, Veltri did not vote on motions relating to his compensation and Mr. Hoffman did not vote on a proposed business deal in which he had an interest.

24.     In the vote, Veltri did not participate because of his interest in remaining as CEO. The three non-interested directors voted on the motion to terminate Veltri as CEO for cause. The motion passed 2-1.

25.     After the vote terminating Veltri's employment, the Board attempted to elect Ryan Smith, the CFO, as interim CEO. Veltri voted on this motion and it was defeated by a 2-2 vote.

26.     On information and belief, after the board meeting, Veltri privately and unilaterally sought advice from the Company's corporate counsel, Kutak Rock, who determined that Veltri could vote on the motion for the termination of his employment. Veltri then instructed Kutak Rock to convey that determination to the board on behalf of Veltri, and assert that, because Veltri would have voted against the termination of his employment, the motion would have failed, and the minutes of the meeting would reflect that the motion failed. Under this artifice, Veltri continued taking and directing Company action as CEO without board approval.

27.     On February 27, 2019, Director Pico terminated the relationship with Kutak Rock, U.S. Energy's corporate counsel, and informed the firm that neither it nor Veltri had authority to act on U.S. Energy's behalf.

28.     On February 28, 2019, Director Pico emailed a letter to Mr. Veltri and corporate counsel informing him for the reasons his termination. Those included:

     a.    intentional misrepresentation to the Board concerning the payment of U.S. Energy funds to third parties in the amount of $374,000.00;

     b.    intentional misrepresentations to the Board regarding the use of those funds;

     c.    entry into two undisclosed and unauthorized transfers of U.S. Energy funds to Roy Hill's personal bank account in the amounts of $62,500.00 on 1/22/18, and $61,827.92 on 2/23/2018;

d.      repeated failure to register APEG shares of common stock, which directly resulted in the confrontation with APEG and caused the financial crisis enveloping U.S. Energy at this time;

e.      failure to register APEG shares in direct contravention of company fiduciary duties to our shareholders;

f.      reckless, unethical and irresponsible use of U.S. Energy outside counsel for your personal benefit and at the detriment of U.S. Energy; and

g.      directing U.S. Energy corporate counsel to attack APEG rather than to reach a conciliatory agreement in order to protect your employment and personal interests, rather than protecting the stock value and reputation of U.S. Energy, which resulted in the filing of a Current Report on Form 8-K.

29.      Under Wyoming law, Veltri could not vote as a director on the motion to terminate his employment. Moreover, once the vote occurred and the motion passed on February 25, the action could not be amended or modified without a subsequent board meeting called in accord with the bylaws.

30.      Despite the termination of his employment as CEO, U.S. Energy's By-Laws allowed Veltri to remain a director until the next annual meeting. As a result, the board has Veltri and his friend, Director Hoffman, in disagreement with the independent Directors Chitwood and Pico. This deadlock makes U.S. Energy unable to govern itself, appoint officers, or even resolve conflicts.

C.      **The Texas Litigation.**

31.     Despite the vote to remove Veltri and the termination of representation by Mr. Pico, Veltri instructed Kutak Rock to file a lawsuit in Texas against the Plaintiffs. He also instructed Kutak Rock not to communicate with Directors Pico and Chitwood.

32.     On March 1, 2019, U.S. Energy Corp and its wholly-owned subsidiary, Energy One, LLC filed its *Original Petition and Application For Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and Appointment of Receiver* ("Original Petition") in the 190th Judicial District Court of Harris County, Texas asserting various causes of action that each relate to the loan documents and the DACA held by Plaintiff and actions taken by Plaintiff under those agreements.

33.     The lawsuit involved claims about U.S. Energy's credit facilities held by Plaintiffs. While Veltri was CEO, Plaintiffs and U.S. Energy entered into an Exchange Agreement (the "Exchange Agreement"), whereby Plaintiffs agreed to convert $5,063,380 of a loan balance into shares of common stock of U.S. Energy in consideration of a conversion fee of $600,000, payable upon the date of the issuance of the shares to Plaintiffs. The shares were issued to Defendants on December 27, 2017 however, the Conversion Fee was not paid until March 19, 2018.

34.     The Exchange Agreement also required U.S. Energy to file an S-3 registration state registering Plaintiffs' shares for public resale by December 31, 2017. Having access to public markets for its shares is substantial consideration for the exchange, otherwise, the shares are restricted and cannot be sold on the public markets. Despite multiple written demands, U.S.

Energy refused to perform its obligations under the Exchange Agreement, and the shares remain unregistered for resale.

35.     U.S. Energy defaulted their obligations under Section 10.01(b) of the Credit Agreement, *as amended,* for failing to pay the $600,000.00 upon the issuance of the stock to Lender as required under the Exchange Agreement.

36.     In March 2018, Plaintiffs demanded that U.S. Energy remit this amount plus reimbursement of attorney fees incurred by March 30th, 2018. That never happened.

37.     Plaintiffs provided written notification of default to U.S. Energy on February 21, 2019 and U.S. Energy failed to cure such defaults. The Plaintiffs also provided written notice of demand to transfer funds to First Interstate Bank per its rights under the DACA. In response, Veltri, acting as CEO and without Board approval as required in the Bylaws, demanded to re-borrow the balance that was exchanged under the Exchange Agreement.

38.     On the same day U.S. Energy filed its Texas lawsuit, it also sought a temporary restraining order to stop the movement of funds out of its account pursuant to DACA. The Texas state court issued a TRO in U.S. Energy's favor.

39.     Plaintiffs immediately removed the matter to the United States District Court for the Southern District of Texas, Houston Division. As part of a battle over removal, U.S. Energy's Audit Committee intervened and asked the Texas Federal Court to put measures into place to protect U.S. Energy while Veltri, ostensibly litigating for U.S. Energy, and Plaintiffs resolved the matter. The Texas Federal Court granted the Committee's motion and ordered U.S. Energy to appoint its CFO, Ryan Smith, as the signatory on all bank accounts and required that any U.S. Energy disbursements be approved in writing by the Audit Committee. The Texas Federal Court

also ordered the release of slightly more than $800,000 of funds seized pursuant to the DACA. (A true and correct copy of the Texas Court's orders are attached as Exhibit 4).

40.     In response to these orders, Veltri directed U.S. Energy's attorneys to dismiss the Texas case. The Audit Committee moved to strike the notice of dismissal. On March 15, 2019 the Federal Court ruled that U.S. Energy could not dismiss the case, that all the previous orders are still in force and that Kutak Rock was dismissed, at its request, from representing U.S. Energy. (A true and correct copy of the Texas Court's order is attached as Exhibit 5)

41.     Upon information and belief, to date, this litigation has cost U.S. Energy a substantial amount of attorney fees. Also, upon information and belief, Veltri has refused to comply with the Federal Court order and is in sole control of the Company's operating accounts.

## FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT)

42.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 41 of this Complaint as if set forth fully here.

43.     The Wyoming Uniform Declaratory Judgment Act provides, in pertinent part, that: "Any person interested under a…written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute . . . may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations." Wyo. Stat. § 1-37-103.

44.     As shareholders, Plaintiffs have an interest in determining whether the actions of the Company board of directors follow Wyoming law and the Company's bylaws. As

shareholders, Plaintiffs also have an interest in enforcing the board's valid decision to terminate Veltri's employment as CEO.

45.     This Court can award equitable relief, like declaratory judgment, invalidating a director's conflict interest transaction if: 1) a majority of the qualified directors, defined as those who do not have an interest in the transaction, do not vote to authorize the action; and 2) a majority of shareholders do not vote to authorize the transaction, and 3) the transaction was not fair to the corporation. Wyo. Stat. Ann. § 17-16-862(a)(i).

46.     A director's conflicting interest transaction means "a transaction effected or proposed to be effected by the corporation, or by an entity controlled by the corporation: (A) To which, at the relevant time, the director is a party; or (B) Respecting which, at the relevant time, the director had knowledge and a material financial interest known to the director; . . ." Wyo. Stat. Ann. § 17-16-860(a)(ii).

47.     Veltri's decision that he could vote on his termination as CEO and stance that he functionally did to defeat the vote constituted a director's conflicting interest transaction because he was a party to the transaction and had a material financial interest in the outcome of the termination decision.

48.     Likewise, Veltri's decision to vote on electing Ryan Smith as interim CEO was a director's conflicting interest transaction because he had a material financial interest in the outcome of the decision.

49.     A qualified director for purposes of Section 862(a)(i) is "not a director as to whom the transaction is a director's conflicting interest transaction, or a director who has a

material relationship with another director as to whom the transaction is a director's conflicting interest transaction." Wyo. Stat. Ann. § 17-16-860(a)(ii).

50.     As a result, Veltri cannot be a qualified director because the vote on his termination remains one where he has a conflict of interest. So Veltri's stance that his vote would have defeated the motion did not comply with the requirement for only qualified directors to participate.

51.     As of filing this Complaint, the qualified directors have not voted to approve Veltri's stance that he could vote and as such reverse the adoption of the motion to terminate his employment as CEO.

52.     As of filing this Complaint, the majority of Company shareholders have not voted to authorize Veltri's position that he remains as CEO.

53.     As of filing this Complaint, Veltri continuing as CEO is not fair to the corporation. Fair to the corporation means for purposes of Section 861(b)(iii) that "the transaction as a whole was beneficial to or at least not harmful to the corporation, taking into appropriate account whether it was: (A) Fair in terms of the director's dealings with the corporation; and (B) Comparable to what might have been obtainable in an arm's length transaction, given the consideration paid or received by the corporation." Wyo. Stat. Ann. § 17-16-860(a)(iii).

54.     Here, Veltri has continued to act as if he was the CEO of U.S. Energy based on his alleged ability to vote. In his purported role, he has acted against U.S. Energy's best interests by: 1) causing U.S. Energy to file an 8-K without board authorization; 2) causing U.S. Energy to file lawsuit in state court in Texas against APEG without board approval; 3) retaining counsel in

Texas without board approval; 4) upon information and belief, incurring $300,000 in attorneys' fees related to the TX litigation, without board approval or oversight; and 5) instructing former corporate counsel to not communicate with board members who voted in favor of motion to terminate his employment.

55.     As a result, this Court has the authority to award equitable relief like declaratory judgment. Therefore, Plaintiffs request the Court declare:

a.      The motion to terminate Veltri's employment as CEO was a director's conflicting interest transaction for Veltri under Wyoming law;

b.      The motion to appoint Ryan Smith as interim CEO was a director's conflicting interest transaction for Veltri under Wyoming law;

c.      Veltri was not a qualified director under Wyoming law for the purpose of participating in the discussion regarding the motion to terminate his employment or voting on that motion;

d.      Veltri was not a qualified director under Wyoming law for the purpose of participating in the discussion regarding the motion to appoint Ryan Smith or voting on that motion;

e.      The board's 2-1 vote to terminate Veltri as CEO, without Veltri's vote, was a valid board action within the authority of the board of U.S. Energy under the Company bylaws and Wyoming law;

f.      The board's vote to appoint Ryan Smith as CEO, not counting Veltri's vote, was a valid board action within the authority of the board of U.S. Energy under the Company bylaws and Wyoming law.

## SECOND CLAIM FOR RELIEF
### (INUNCTIVE RELIEF)

56.     Plaintiffs incorporates by reference the allegations set forth in Paragraphs 1 through 55 of this Complaint as if set forth fully here.

57.     Rule 65 of the Federal Rules of Civil authorizes actions for injunctive relief.

58.     "Injunctions are issued when the harm is irreparable and no adequate remedy at law exists. Injunctive relief is appropriate when an award of money damages cannot provide adequate compensation. An injury is irreparable where it is of a peculiar nature, so that compensation in money cannot atone for it." *CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.*, 2009 WY 113, ¶ 10, 215 P.3d 1054, 1058 (Wyo. 2009) (internal citations omitted).

59.     Immediate injunctive relief is warranted in this case.

60.     Veltri purports to act as CEO of U.S. Energy. In his purported role, he has acted against U.S. Energy's best interests by: 1) causing U.S. Energy to file an 8-K without board authorization; 2) causing U.S. Energy to file lawsuit in state court in Texas against APEG without board approval; 3) retaining counsel in Texas without board approval; 4) upon information and belief, incurring $300,000 in attorneys' fees related to the TX litigation, without board approval or oversight; and 5) instructing former corporate counsel to not communicate with board members who voted in favor of motion to terminate his employment.

61.     Each of these actions disrupts and undermines the trust between shareholders and U.S. Energy. As a result, U.S. Energy's shareholders have lost confidence in the ability of the company to manage itself. These actions also place any disfunction at U.S. Energy on public display. Either of these could damage U.S. Energy's stock price, the market for U.S. Energy shares, and jeopardize its listing on the Nasdaq. In fact, in December 2018, Nasdaq notified

Veltri and U.S. Energy that the Company stock will be delisted if it does not increase its stock price to more than one dollar for ten consecutive trading days in the next 180 days

62.     Even without these acts, Veltri remaining as CEO gives him the exclusive power that he could use to undermine U.S. Energy. These powers include calling special board or shareholder meetings, being a signatory on bank accounts, and having the purported authority to bind the company.

63.     While it may seem far-fetched for a CEO to destroy his own company, Veltri has stated that if he cannot control U.S. Energy he will "burn it to the ground." His actions in the Texas lawsuit prove as much. Despite starting the lawsuit, Veltri instructed Kutak Rock to dismiss the case. (See Notice of Dismissal attached as Exhibit 6). This Notice of Dismissal was filed on the heels of the Texas court ordering that U.S. Energy's CFO become the signatory on all U.S. Energy bank accounts, and U.S. Energy disbursements must be approved in advance by the Audit Committee. (See Exhibit 4.) Those orders diminished Veltri's power over the company and provide accountability and oversight, so he attempted to nullify the orders via dismissal.

64.     The immediate and long-term harm Plaintiffs have suffered, and will continue to suffer, because Veltri continues to act as CEO far exceeds the harm that might result to him from an injunction.

65.     Based on the clear statutes governing Wyoming corporations described above, Plaintiffs will likely succeed on the merits of this action.

66.     The injunctive relief sought is not adverse to the public interest.

67.     Having satisfied the elements necessary to grant injunctive relief, Plaintiffs are entitled to an appropriate mandatory, preliminary, and permanent injunction, which:

a.     requires Veltri to vacate his position as CEO of U.S. Energy Corporation;

b.     requires Veltri to return all books and records of U.S. Energy in his possession;

c.     prohibits Veltri from acting as CEO of U.S. Energy until the Court resolves the merits of this case; and

d.     appoints the current CFO, Ryan Smith, as interim CEO until the Court resolves this matter.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.     A declaration that the motion to terminate Veltri's employment as CEO was a director's conflicting interest transaction for Veltri under Wyoming law;

B.     A declaration that Veltri was not a qualified director under Wyoming law for the purpose of participating in the discussion regarding the motion to terminate his employment or voting on that motion;

C.     A declaration that the board's 2-1 vote to terminate Veltri as CEO, without Veltri's vote, was a valid board action within the authority of the board of U.S. Energy under the Company bylaws and Wyoming law;

D.     A declaration that Defendant is no longer Chief Executive Officer or President;

E.     A temporary restraining order and preliminary injunction requiring Veltri to vacate his position as CEO and President and take no action as CEO and President of U.S. Energy pending resolution of this case;

F.     A temporary restraining order and preliminary injunction that Chief Financial Officer Ryan Smith is appointed interim CEO;

G.      An order that the Company board shall meet within a specified period of time and appoint, according to the Bylaws, qualified individual(s) necessary to fill all vacancies on the Board such that the Board has five members;

H.      That the Court award the Plaintiff its attorneys' fees and costs.

I.      That the Court award such other and further relief as the Court deems just and proper.

DATED March 18, 2019.

s/ Bradley T. Cave
Bradley T. Cave, P.C. (CO. Bar No. 17753)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY  82003-1347
Telephone: (307) 778-4200
E-mail: BCave@hollandhart.com
Attorney for APEG Energy II, GP and APEG
Energy II, LP

12176536_1

STATE OF _TEXAS_____ )
                            )SS
COUNTY OF _TRAVIS___ )

    As to the factual allegations contained herein, I hereby swear and affirm that they are true and correct to the best of my personal knowledge.

_____
                    Patrick Duke

    Subscribed and sworn to before me by _Patrick Duke_ this _18_ day of March 2019.

_____
                    Notary Public

My commission expires: December 4, 2022



RACHEL LEIGH NURSEY
My Notary ID # 131814447
Expires December 4, 2022