# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:19-cv-00801-WJM**

APEG Energy II, LP,

        Plaintiff,

    v.

David Veltri,

        Defendant.

    v.

U.S. Energy Corporation,

        Nominal Defendant

---

## MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE AND REIMBURSEMENT OF ATTORNEYS' FEES AND EXPENSES

Plaintiff APEG Energy II, LP (APEG), through its counsel, Holland & Hart LLP, and pursuant to Fed. R. Civ. P. 41(a)(2), Fed. R. Civ. P. 23.1(c), and Wyo. Stat. §§ 17-16-745 and -746(a)(i), moves the Court to dismiss the above-captioned matter, discharge the Custodian and set a schedule for the application of attorneys' fees and expenses. As grounds for this Motion, APEG states as follows:

### INTRODUCTION

U.S. Energy's newly constituted Board of Directors reaffirmed Defendant David Veltri's (Veltri) termination for cause on August 5, 2019 after an investigation into his actions while he was serving as President and CEO of U.S. Energy Corporation ("U.S. Energy" or "the Company"). Because the purpose of this suit was to declare the Board's February 25, 2019 termination of Veltri as valid and to enjoin Veltri from acting as CEO of the Company, APEG's

claims for relief are now moot.  In the absence of a justiciable controversy, the case should be dismissed immediately, including the discharge of the Custodian.  Additionally, U.S. Energy has substantially benefitted from this action.  APEG is therefore entitled to reimbursement of its reasonable expenses, including attorneys' fees, incurred in this proceeding.

APEG asked Veltri's counsel for his position with respect to this motion by email on September 9, 2019.  Veltri's counsel replied stating they were attempting to determine their client's position.  As of the time this motion was filed, Veltri's counsel has not substantively responded regarding whether Veltri opposes this motion.

## ARGUMENT

## I.      APEG's Claims for Relief Are Moot and Should Be Dismissed

Article III of the Constitution restricts the power of federal courts to hear "Cases" and "Controversies."  *Chafin v. Chafin*, 568 U.S. 165, 171 (2013).  There is no case or controversy, and a suit becomes moot, when due to changed circumstances, "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.* at 172 (citation omitted).  "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world."  *Brown v. Buhman*, 822 F.3d 1151, 1165-66 (10th Cir. 2016) (citation omitted).  "Put another way, a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision."  *Id.* (citation omitted).

The Court must approve the voluntary dismissal of a derivative action brought in federal court under the Wyoming Business Corporation Act.  *See* Fed. R. Civ. P. 41(a)(2); Fed. R. Civ. P. 23.1(c); Wyo. Stat. § 17-16-745.  Because a court loses jurisdiction when a claim becomes moot, *e.g.*, *Chafin*, 568 U.S. at 171-72, dismissal is proper.  "It is fundamental, of course, that a

dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal…

must be without prejudice." *Brown*, 822 F.3d at 1179.

APEG's claims are moot and should be dismissed without prejudice.  APEG asserted two

claims for relief in this action, which may be summarized as: (1) a request for a declaratory

judgment that Veltri had been validly terminated as CEO of U.S. Energy by the vote of the

Company's Board on February 25, 2019; and (2) a request for an injunction enjoining Veltri

from acting as CEO of U.S. Energy.  ECF No. 32, pp. 13-17; 17-19.  Additionally, in its prayer

for relief, APEG requested the Court to order the Company's Board to fill all vacancies on the

Board and to award APEG its attorneys' fees and costs.  *Id*. at 19-20.  Veltri asserted no

counterclaims.  ECF No. 34.

As indicated on the Company's Form 8-K filed August 5, 2019, the Board filled its

vacancies and terminated Veltri as CEO:

> .  .  .  the Audit Committee of the Company conducted an
> investigation into Mr. Veltri's actions while he was serving as
> President and Chief Executive Officer. Following the completion
> of such investigation, the Audit Committee met on June 21, 2019
> and voted unanimously to reaffirm the termination of Mr. Veltri
> for cause and recommend to the Company's Board to review and
> ratify such action. The Board, which following the issuance of the
> Second Order was reconstituted with all five members as required
> by the Company's bylaws, met on August 5, 2019 and received a
> report from the Audit Committee. Following such report, the
> Board approved and ratified the termination of Mr. Veltri as
> President and Chief Executive Officer for cause.

Form 8-K, Aug. 5, 2019, Item 5.02, attached hereto as Exhibit 1.

Moreover, on September 16, 2019, U.S. Energy filed its Form 10-K with the SEC

describing the findings of a forensic investigation of Veltri's expense account irregularities and

other questionable payments conducted by an independent accounting firm.  Form 10-K, Sep. 16,

2019, pp. 20-21, attached hereto as Exhibit 2..[1]  In summary, the company reported that the investigation uncovered approximately $81,014 in payment of Veltri's expense items that appear to be personal in nature or lacked adequate documentation to demonstrate a legitimate business expense, and payments to consultants and other third-parties retained by Veltri totaling in excess of $87,000 for work performed under circumstances in which Veltri may have had a conflict of interest or may have personally benefited from the services.  Ex. 2, pp. 20-23, 82-83.  Under these circumstances, the U.S. Energy Board of Directors has unequivocally terminated Veltri's employment as Chief Executive Officer.

If the Court adjudicated APEG's claims, it would have no effect in the real world.  A declaration in either party's favor as to the validity of the Board's February 25, 2019 vote on Veltri's employment status would mean nothing.  Either way, Veltri's employment is still terminated.  Likewise, there is no point in enjoining Veltri from acting as CEO.  He has been permanently removed.  Additionally, an order requiring the Board to fill all vacancies on the Board would be meaningless, as the Board has already done so, and a shareholder meeting has been scheduled for November 6, 2019 to give shareholders the opportunity to elect the entire Board.  ECF Nos. 77; 76, ¶ 3; Form 8-K, Sep. 6, 2019, p. 3, attached hereto as Exhibit 3.  Granting the relief requested by APEG in its Amended Complaint would no longer redress an actual harm.  The harm to the Company—a deadlocked Board and a rogue CEO—no longer exists.

---

[1] Exhibit 2 consists of an excerpt of the Form 10-K.  The entire Form 10-K can be accessed through the SEC's Edgar system, or here.

## II.    The Custodian Has Accomplished the Purposes of his Appointment and Should be Discharged

On APEG's motion, the Court appointed C. Randel Lewis as the Company's custodian under Wyo. Stat. § 17-16-748 on May 30, 2019.  ECF No. 62.  In its Order, the Court stated: "The Custodian shall ensure that the five-member board elected at the annual shareholders' meeting promptly votes on a CEO to replace the Custodian in this role."  *Id*. at ¶ 26.  And "[p]romptly after election of a CEO per ¶ 26 of this Order, the Custodian shall move this Court to be discharged."  *Id*. at ¶ 27.

The Custodian's work as CEO is now completed, and day-to-day management of U.S. Energy should be returned to the fully-constituted Board of Directors and an interim CEO that the Board selects.  As the Form 8-K (Exhibit 1), the Form 10-K (Exhibit 2) and the Custodian's Second Interim Report (ECF No. 75) demonstrate, the Custodian and the Board have accomplished the requirements of the Court's May 30 Order, completed the audit of its financial statements, filed audited financial statements, and instituted several governance changes to benefit the company.  *See* ECF No. 62; Exhibit 1; and Exhibit 2.  The Custodian has fully and effectively accomplished the purposes for which he was appointed as CEO.

APEG therefore requests that the Custodian be discharged at this time.  This discharge will benefit the company and its shareholders by taking another interim step toward a return to corporate governance by the Board and shareholders, permitting the Board – which is directly accountable to shareholders - to select the interim CEO pending the shareholders' meeting, and save the expense associated with the ongoing services of the Custodian.

## III.    Notice to Shareholders Is Not Necessary

Wyoming law requires shareholder notice of a proposed discontinuance or settlement only if the Court determines it "will substantially affect the interests of the corporation's

shareholders or a class of shareholders."  Wyo. Stat. § 17-16-745.  Similarly, Fed. R. Civ. P.

23.1(c) requires that "[n]otice of a proposed settlement, voluntary dismissal, or compromise must

be given to shareholders or members in the manner that the court orders."  Notice to shareholders

and the court's approval of a dismissal are intended to ensure that the dismissal serves the best

interests of the corporation and its absent shareholders.  *Papilsky v. Berndt*, 466 F.2d 251, 258

(2d Cir. 1972) (citing *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970), cert. denied, 401

U.S. 912 (1971)); 7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1839 (3d ed.).  But it is not

appropriate to apply the notice requirement of Rule 23.1 when this underlying policy is not

served.  *See PGH Inv., L.P. v. Colorado Realty Grp.*, LLC, 2013 WL 1876754, at *4 (D. Colo.

May 3, 2013).

Accordingly, courts have recognized that notice is not necessary when a derivative action

is dismissed on the grounds of mootness.  7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1839

(3d ed.) (citing *Daugherty v. Ball*, 43 F.R.D. 329, 336 (C.D. Cal. 1967)); *Weiss v. SCM Corp.*,

1986 WL 7782, at *1 (S.D.N.Y. July 9, 1986).  Because there has been "no compromise or

abandonment of any existing valid claim," notice is a "needless expense."  *Weiss*, at *1.  Indeed,

without a valid claim, there is "no person, shareholder or otherwise, by whom a derivative action

might or could be initiated, prosecuted or maintained on behalf of [the company]."  *Daugherty*,

43 F.R.D. at 336.  "There are no shareholders whose interests might be or could be in any way

adversely affected or prejudiced by not being given or not receiving notice of the dismissal on

the merits."  *Id.*

The moot claims here are unsustainable by APEG or any other shareholder.  The actual

harm that prompted this case no longer exists, and dismissal will deprive no shareholder of an

actionable claim on the same grounds.  Dismissal will not "substantially affect the interests of the

6

corporation's shareholders or a class of shareholders." Wyo. Stat. § 17-16-745. Notice is neither required nor appropriate. If, in the alternative, the Court believes that some notice is appropriate, the Court should order U.S. Energy to file a Form 8-K describing the intended discharge of the Custodian.

IV.     **APEG Is Entitled to Payment of Attorneys' Fees and Expenses**

Under both federal and Wyoming law, APEG is permitted to recover its litigation costs, including attorneys' fees, where the proceeding confers a substantial benefit to U.S. Energy. Wyo. Stat. § 17-16-746(a)(i);[2] *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396-97 (1970). A substantial benefit does not have to be a monetary one. *Id.* at 395. A substantial benefit is "one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Id.* at 396 (citation omitted).

The purpose of allocating the cost of litigation to the benefited corporation is to "spread the costs proportionately" among the members of an ascertainable class—i.e., the shareholders—who reaped the benefit of the suit. *Id.* at 393-94. Accordingly, to award attorneys' fees to a plaintiff "who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." *Id.* at 396-97. A plaintiff need not obtain judgment to recover attorneys' fees and litigation expenses. *See* Wyo. Stat. § 17-16-746; *Lewis*

_____

[2] Wyo. Stat. § 17-16-746 states:

(a) On termination of the derivative proceeding the court may:

(i) Order the corporation to pay the plaintiff's reasonable expenses, including counsel fees, incurred in the proceeding if it finds that the proceeding resulted in a substantial benefit to the corporation; …

*v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982).  Indeed, the substantial benefit may arise, as here, where corporate remedial action moots a plaintiff's claim.  *Id*.

U.S. Energy has substantially benefited from this suit.  At the time of filing and shortly thereafter, Veltri seized control of the Company from a deadlocked Board and committed several *ultra vires* acts, such as causing the Company to file Form 8-K's with the SEC without the Board's approval; retaining outside counsel without the Board's authorization; incurring significant legal expenses without the Board's approval; instructing former corporate counsel to withhold information from Board members who voted for his termination; and attempting to reconstitute a one-person Audit Committee in violation of Nasdaq requirements.  *See* ECF No. 33, pp. 7-8; ECF No. 36, Exhibit 1, p. 5.  Veltri and Director Hoffman impeded the execution of paperwork to name Ryan Smith as the Company's signatory (as the Texas court ordered) and brought the Company's audit to a standstill.  ECF No. 36, p. 7.  The Company was facing delisting from the Nasdaq exchange.  ECF No. 6, p. 4.

As a result of this suit, the Company has filled the seats of the Board, the Board is no longer deadlocked, and the Company is now operating under basic principles of corporate governance.  *See* Custodian's Second Interim Report (ECF No. 75); Exhibit1; and Exhibit 2. The Company is on track to meet Nasdaq's extended deadline to comply with the exchange's minimum $1/share bid price.  ECF No. 75, ¶¶ 3, 6.  The Defendant has been terminated for cause after an investigation into his actions while he was serving as President and CEO.  Exhibit 1 and Exhibit 2.  As a result of this action, the Company has modified the Company's Bylaws and other Company governance documents and policies to impose financial and other controls that were lacking in the Company's operations.  ECF No. 75, ¶ 9; Exhibit 1, Items 5.03, 5.05, 7.01.

These corrective actions substantially benefit the Company, and the cost of this legal action, which brought about these changes, should be proportionately shared by its shareholders. Upon termination of this action, APEG is entitled to reimbursement of its reasonable expenses, including attorneys' fees, incurred in this proceeding; and the Court should set a schedule for APEG's application for attorneys' fees.

WHEREFORE, APEG respectfully requests that this Court enter an Order discharging the Custodian; dismissing the above-captioned matter; waiving notice to the shareholders; and setting a schedule for APEG's application for attorneys' fees.

DATED September 18, 2019.

/s/ *Bradley T. Cave*
Bradley T. Cave, P.C. (CO Bar No. 17753)
Jeffrey S. Pope (CO Bar No. 44051)
Matthew L. Chudacoff (CO Bar No. 52202)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY  82003-1347
Telephone: (307) 778-4200
E-mail: BCave@hollandhart.com
E-mail: JSPope@hollandhart.com
E-mail: MLChudacoff@hollandhart.com

*ATTORNEYS FOR APEG ENERGY II, LP*

13438744_v2